**Exhibit A**

| | |
|---|---|
| BOULDER COUNTY DISTRICT COURT<br>STATE OF COLORADO<br><br>1776 6th Street<br>Boulder, CO 80302 | DATE FILED<br>January 6, 2025 7:37 PM<br>FILING ID: 7F7433B6364A1<br>CASE NUMBER: 2025CV30019 |
| **BENJAMIN NISTON,**<br>Plaintiff,<br><br>**v.**<br><br>**OFFICER MADISON ZERFAS**, in her individual capacity, and<br>**SERGEANT MICHAEL KIMBLEY**, in his individual capacity,<br>Defendants. | ▲ COURT USE ONLY ▲<br><br>Case Number:<br><br>2025CV |
| *Attorney for Plaintiff:*<br>Sarah Schielke, #42077      P: (970) 493-1980<br>The Life & Liberty Law Office   F: (970) 797-4008<br>1055 Cleveland Avenue<br>Loveland, CO 80537<br>sarah@lifeandlibertylaw.com | Division: |

### COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Benajmin Niston, by and through the undersigned counsel, with this *Complaint and Jury Demand* and in support of the same, respectfully submits as follows:

### INTRODUCTION

1. Plaintiff brings this civil rights action pursuant to § 13-21-131, C.R.S. and 42 U.S.C. § 1983 and 1988 for various forms of relief, to include compensatory damages and attorney's fees, stemming from Defendants' violations of Plaintiff's rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and Article II, Section 7 of the Colorado Constitution.

2. The Court has jurisdiction over Plaintiff's claims pursuant to § 13-21-131, C.R.S., § 13-1-124(1)(b), C.R.S., because the acts giving rise to the claims were committed in the State of Colorado, and pursuant to state court supplemental jurisdiction over the federal claims arising out of 42 U.S.C. § 1983.

3. Pursuant to C.R.C.P. 98(c)(5), venue is proper in this Court, which Plaintiff designates as the place of trial for this action.

4. Jurisdiction supporting Plaintiff's claim for attorney's fees is conferred by 42 U.S.C. § 1988 and § 13-21-131(3).

5. All of the event described herein occurred in Boulder County and the State of Colorado.

## PARTIES

6. Plaintiff Benjamin Niston is, and at all times relevant to this Complaint has been, a resident of the State of Colorado. He currently resides in Longmont, Colorado.

7. Defendant Longmont Police Officer Madison Zerfas ("Officer Zerfas") was at all times relevant to this complaint duly appointed and sworn as a police officer working for the Longmont Police Department. Officer Zerfas is a named Defendant in her individual capacity.

8. Defendant Longmont Police Officer Sergeant Michael Kimbley ("Sergeant Kimbley") was at all times relevant to this complaint duly appointed and sworn as a police officer working for the Longmont Police Department. Sergeant Kimbley is a named Defendant in his individual capacity.

## STATEMENT OF FACTS

9. For Plaintiff Benjamin Niston, the night of January 6, 2023 had been a lovely one. He was 36 years old, he was employed as a technical support representative for the City of Longmont's municipal internet service (a job he loved), and he had just spent that Friday's evening playing Dungeons and Dragons with five of his best friends in Loveland.

10. The group had first gone to The Cove (a restaurant) where Mr. Niston they ate dinner and some had a couple drinks (Mr. Niston had two beers), finishing around 10-11 pm. Then one of the friends drove the group back to the Dungeon Master's (CJ's) house, picking up where they had left off on their long-running Dungeons and Dragons game.

11. The group played for a few more hours before calling it a night around 1-2 am. Most of the group headed out to their own homes.

12. Mr. Niston was an extremely law-abiding and law-conscious citizen with no criminal history. He valued highly his job with the City of Longmont and he always made certain to err on the side of caution after he had any drinks by waiting *at least* 1+ hour per drink consumed before he drove. He was vocal and purposeful about this.

13. And so, conscientious of the two beers he had consumed previously, Mr. Niston asked the Dungeon Master (CJ) and his girlfriend if he could hang around at their place for another hour or two to ensure he was completely sober before driving. They were night owls themselves and happy to oblige. The three then spent the next couple hours talking about – as Mr. Niston puts it - "random nerdy stuff," politics, and philosophy.

14. At about 3 am, now confident that no impairing alcohol remained in his system, Mr. Niston then began his drive home from the Dungeon Master's house in Loveland to his own home in Longmont.

15. Mr. Niston ensured he had no distractions and he focused on the road the whole drive. About 15 minutes into his drive, while driving westbound along the dark Ute Highway (highway 66) in Mead, he saw a vehicle up ahead abruptly veer out of eastbound lane

into its shoulder and nearly off the road, before regaining control and repositioning itself back in the eastbound lane and passing Mr. Niston.

16. Mr. Niston assumed this driver had been distracted by something inside their vehicle (there were no other cars or traffic, and the surrounding area was so dark that there wasn't anything outside the cars to look at) and so he drove on with no further thought given to the brief event.

17. In fact, the driver of the other car that had swerved all over the road right before passing Mr. Niston was Defendant Longmont Police Officer Madison Zerfas.

18. Upon information and belief, Officer Zerfas had been looking at her department-issued laptop while driving and looked up right at the time when there was a bend in the road which made it – for a moment – appear as though Mr. Niston's vehicle was coming at her:





Visual of oncoming traffic at 250 feet.

© 2023 Google

19. Officer Zerfas was embarrassed about her distracted driving and her uncontrolled response to seeing Mr. Niston's car on the road up ahead (and she was worried that Mr. Niston would report *her*) so she decided to quickly turn around and initiate a traffic stop on him and claim that he had nearly hit her.

20. Officer Zerfas was eager to make a DUI arrest. She knew how important having high DUI arrest stats was at the Longmont Police Department and since transferring to LPD from Fargo PD just a year prior, she was growing worried that she wasn't putting up strong enough DUI arrest numbers to keep her supervisors happy.

21. Officer Zerfas knew that Longmont Police Department regularly participated in timed competitions put on by MADD (Mothers Against Drunk Driving), in which law enforcement agencies would compete with one another to see who could make the most DUI arrests in a weekend. She knew that LPD officers regularly nominated one another for prestigious awards related to impaired driving enforcement (winning at least 2 awards just months later) and that having the most DUI arrests was the only way to qualify for such accolades.

22. Officer Zerfas had also witnessed other officers at LPD arrest and charge people who had blown zeroes on breath tests without hesitation. She felt she was "due" a DUI arrest.[1]

23. Mr. Niston, blithely unaware of Officer Zerfas or her malicious intentions, drove on, safely and soberly.

24. Officer Zerfas whipped her car around, activated her red and blue lights, and caught up to Mr. Niston, where he then, observing her behind him, pulled over promptly, normally, safely, and without indication of impairment.

25. Officer Zerfas quickly approached Mr. Niston's window and in her excitement to falsely accuse Mr. Niston of having nearly hit her, she slurred her words in her introduction, uttering incomprehensible sounds.

26. Mr. Niston, an extremely polite and courteous individual, did his best to ignore Officer Zerfas's slurring and assumed she must have asked for his license (since that's what a police officer typically does at the outset of a stop). He said "sure," and began to retrieve it from the wallet in his back pocket.

27. Officer Zerfas seized this opportunity to jump down Mr. Niston's throat, and snarled at him: "I didn't ask you for anything! Do you know why I stopped you?"

28. Mr. Niston genuinely had no idea, and his face, as observed on Zerfas's BWC video, revealed the unmistakable same. He answered: "No."

29. Officer Zerfas then falsely accused Mr. Niston of "almost hitting [her] head on" and being "in the wrong lanes of traffic."

30. Mr. Niston was baffled by this accusation. He responded with an utterly flummoxed "what??" and looked outside his car window back down the road, trying to comprehend what Officer Zerfas could be talking about.

31. "You were, you were cruising, you were in the wrong lanes of traffic, you almost hit me" Officer Zerfas continued, lying through her teeth.

32. Mr. Niston knew this couldn't be true, but he also had been raised to always be respectful to law enforcement, no matter what. So he replied: "Um… sorry?"

33. Officer Zerfas then abruptly demanded Mr. Niston produce the driver's license that she had just ridiculed him for retrieving. In the same breath, she also demanded to know "how much" Mr. Niston had had to drink that night.

34. Mr. Niston told her he had had two beers 4 hours earlier, finished by 11 pm, and he also answered without difficulty or slightest indication of impairment all the rest of her rapid-fire interrogation questions about where he had been, where he was headed, what types of beers he had consumed, the name of his friend, and more.

---

[1] "I was due!!" is literally what Officer Zerfas proclaimed to her sergeant when she called him to let him know she was about to put Mr. Niston through roadsides.

35. Officer Zerfas was specifically trained that impaired drivers struggle with divided attention tasks (like obtaining documents and answering unrelated questions simultaneously) and witnessed firsthand during this portion of the encounter Mr. Niston demonstrate flawless divided attention skills, retrieving for her all requested documents and items while simultaneously answering all her rapid accusatory questions.

36. Officer Zerfas then told Mr. Niston to "hang tight." She then took a couple minutes to speak with LPD officer Guerrero who had arrived to provide cover.

37. Defendant Zerfas then walked back to Mr. Niston and ordered him to step out of the car to do roadside tests ("So I'm gonna have you step out and we're gonna run through a few tests to make sure you're good to drive"). In violation of Colorado law and Longmont PD training and policy, she purposely did not tell Mr. Niston that roadsides are voluntary.

38. Mr, Niston complied. Mr. Niston's exit and his walk to the vehicle was normal and without indication of impairment. Officer Zerfas ignored this, omitted it (and every other glaring indicator of Mr. Niston's observable sobriety seen through the encounter) from her report, and pressed on.

39. Defendant Officer Zerfas then asked Mr. Niston several questions related to whether he took any prescription medications, wore contacts or had any head or eye injuries. Mr. Niston answered all of these questions promptly, normally, and without indication of impairment. And in response to the question about whether he took any prescription medications, he responded without hesitation, "Nope."

40. The first test Officer Zerfas administered on Mr. Niston was HGN (Horizontal Gaze Nystagmus). This test is designed to considered "the gold standard" for detecting impaired drivers by law enforcement because they believe it to be the "most scientific" and "the most accurate" of all the roadside tests at their disposal. Law enforcement officers nationwide regularly claim when testifying at DUI trials and hearings that clues on an HGN test make it near certain that the driver was impaired, because (as they love to say), "the eyes never lie."

41. Unfortunately for Mr. Niston, Defendant Zerfas does lie. Defendant Zerfas would later claim in her report that Mr. Niston had shown 6 "clues" of impairment when she checked his eyes for HGN. Mr. Niston, however, was stone cold sober. His eyes tracked quite smoothly and showed no nystagmus whatsoever.

42. Officer Zerfas next directed Mr. Niston through the walk-and-turn test. Mr. Niston maintained perfect balance during the maneuver. Officer Zerfas (perhaps purposely) messed up the instructions for the walk and turn, instructing Mr. Niston that he was "not to stop the test until I tell you," which caused Mr. Niston to quite reasonably believe he was supposed to keep walking down the line until Zerfas stopped him. He therefore took twice as many heel-to-toe steps (with perfect balance) than other drivers have to take.

43. Defendant Zerfas then directed Mr. Niston through the "One-Legged Stand" maneuver. This test requires a person to balance on one leg for thirty seconds while staring at their foot, counting out loud, and keeping hands at their sides.

44. Mr. Niston completed the one leg stand test perfectly and without indication of impairment.

45. Defendant Zerfas is specifically trained by NHTSA that all studies and research have shown that very few impaired subjects can stand on one leg for 30 seconds in OLS.

46. Officer Zerfas then ordered Mr. Niston to face away from her and interlace his fingers. She stated that she was arresting him for DUI. She explained express consent and gave Mr. Niston the choice of a blood or breath test for his chemical test. Mr. Niston chose a breath test.

47. Officer Zerfas was not intoxilyzer certified at the time she arrested Mr. Niston. So she called her sergeant, Mike Kimbley, and asked if he could administer the intoxilyzer breath test on Mr. Niston for her. He agreed.

48. At the station, Sergeant Kimbley explained to Mr. Niston that they had to sit there for 20 minutes before doing the test. Mr. Niston did so, as soberly and unimpairedly as ever.

49. While waiting for the intoxilyzer machine to print out the results, Officer Zerfas was struggling to get her computer to work. Mr. Niston, an IT support professional, offered assistance and advice to try and help her get her computer working properly. All of his advice was apt, appropriate, astute, and, ultimately, helpful. He showed perfect comprehension, ceaseless courteousness, and never once slurred a single word. No reasonable person on earth would have thought Mr. Niston impaired by anything at this point, regardless of his breath test results.

50. Quite unsurprisingly, the Intoxilyzer then produced a BAC result for Mr. Niston of 0.000, confirming his complete sobriety:



51. Sergeant Kimbley did not tell Mr. Niston this, however. Instead, he told Mr. Niston he was "under the legal limit" but still qualified "for a DWAI which is what this would be, which is impairment in the slightest degree."

52. This was a lie. A BAC of triple zeroes is presumptively unimpaired by law in Colorado. Mr. Niston's breath test results were corroborative of neither DWAI nor impairment to the slightest degree.[2]

---

[2] Adding insult to injury, Zerfas still ultimately wrote Mr. Niston a summons charging him with DUI, *not* the lesser offense of DWAI.

53. Sergeant Kimbley handed the triple zero results to Officer Zerfas. Officer Zerfas then walked Mr. Niston into another holding area to sit on a bench. Then she and Sergeant Kimbley walked a short distance away from him in a hallway, and both muted their cameras in order to discuss what they would do to Mr. Niston next.

54. Officer Zerfas and Sergeant Kimbley then discussed how they would just force Mr. Niston to do a blood draw, as fishing expeditions on drivers' blood nearly always produced trace amounts of some prescription drug or cannabis (which is can be detected in blood more than 30 days after last use).

55. Sergeant Kimbley and Officer Zerfas walked back into the holding room where Mr. Niston was sitting.  Kimbley told Mr. Niston "since you failed roadsides," they were now going to draw his blood to test it for drugs. Kimbley also told Mr. Niston he would need to submit to a DRE (Drug Recognition Exam).

56. Mr. Niston trusted law enforcement. He was utterly unable to fathom police officers that would knowingly arrest and charge an innocent person with crimes they knew he did not commit. He assumed the problem must be confusion on error on the officers' part. He assumed that with more testing, they'd see their mistake and set him free. So, he continued being compliant and agreeable to literally whatever these police officers demanded of him.

57. A paramedic came to the station. He stuck Mr. Niston with a needle and drew two vials of his blood.

58. Because a DRE involves questioning a person about a crime they have already been arrested for, the subject must waive their *Miranda* rights and right to counsel in writing for a DRE to occur.

59. Sergeant Kimbley thus next read Mr. Niston a form advising him of his *Miranda* rights and his right to counsel, and then asked him if he would sign at the bottom indicating he had waived all those rights.

60. Mr. Niston knew better than to sign a form agreeing to waive his constitutional rights. So he checked the box on the form indicating he did *not* waive his rights and he sat back down.

61. Sergeant Kimbley looked at the form as completed by Mr. Niston and sighed in disappointment. He told Mr. Niston: "so just to clarify, we're not gonna have the drug recognition expert come in and speak with you." He told him that this was because Mr. Niston hadn't agreed to waive his rights.

62. Mr. Niston, not realizing that would be a consequence of not waiving his rights, again apologized in earnest to the officers. He then asked for their permission to get a tissue to blow his nose.

63. Officer Zerfas was standing there at a computer typing away writing her police report for Mr. Niston's arrest during this time. Notably, she originally wrote in her report: "I observed an odor of alcohol coming from the vehicle upon initial contact":



64. In the report she ultimately submitted to the district attorney in Mr. Niston's case, however, she changed this statement to a "slight" odor of alcohol:

65. Officer Zerfas charged Mr. Niston with DUI and failure to drive on the right side of the road.

66. Mr. Niston had to call his parents to come pick him up from the police station. This was completely humiliating.

67. Mr. Niston's life was completely upended by this arrest. He had to disclose the arrest to his employer which was the City of Longmont. It caused an enormous amount of stress and anxiety that he was going to lose his job.

68. Mr. Niston also had to spend several thousand dollars on a criminal defense attorney to defend against the wrongful charges Officer Zerfas filed against him. Living with this case

pending was the lowest and darkest time Mr. Niston had ever felt in his life. He struggled with bouts of depression and hopelessness. He stressed and despaired constantly over whether the state would actually try to prosecute him for the crime of DUI when he had done nothing wrong. He wondered if Officer Zerfas would tamper with his blood to ensure it tested positive for something. He questioned his whole life perspective and wondered whether he could ever feel safe again trusting police.

69. More than four months later, on April 10, 2023, Officer Zerfas received Mr. Niston's blood results. It showed nothing detected for ethanol and nothing detected for all other impairing substances:

| Suspect: | Benjamin A. Niston | DOB: | 04/17/1986 | SID: | |

| CBI Item #: | Agency Item #: | Description of Evidence: |
|---|---|---|
| Item 1 | | TOX Collection Kit |
| Item 1.1 | | Gray top vial with blood |
| Item 1.2 | | Gray top vial with blood |

**Results/Opinions and Interpretations:**

Item 1.1

| Drug | Result | Method |
|---|---|---|
| Ethanol/Volatiles | Not Detected | HS-GC/FID |
| Drugs of Abuse Screen | Not Detected | ELISA |

70. After receiving the blood results, the district attorney did *not* promptly dismiss the DUI charge. Because of the lies and exaggerations Officer Zerfas had deliberately included in her report to make Mr. Niston appear impaired, Mr. Niston's defense counsel still had to set the matter for trial and work to get the DA to dismiss the DUI charge against Mr. Niston and Mr. Niston continued having to miss work and appear at additional court dates.

71. After watching the video of Mr, Niston's arrest, the DA did finally dismiss the case against Mr. Niston.

## STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
Section 13-21-131, C.R.S. – Arrest Without Probable Cause
Violation of Colorado Constitution, Article II, Section 7
(against Defendant Zerfas)

72. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

73. Section 13-21-131 of the Colorado Revised Statutes directs that any peace officer who "subjects or causes to be subjected, including failure to intervene, any other person to the deprivation of any individual rights … secured by the bill of rights, article II of the state constitution is liable to the injured party for legal or equitable relief or any other appropriate relief."

74. Statutory immunities and statutory limitations on liability, damages, or attorneys fees do not apply to claims brought pursuant to § 13-21-131.

75. Defendant Zerfas was a police officer under Colo. Rev. Stat. § 24-31-901(3), employed by the City of Longmont and its Police Department at the time she wrongfully seized, arrested and maliciously prosecuted Mr. Niston.

76. Officer Zerfas did not at any time during her encounter with Mr. Niston have probable cause or reasonable suspicion or any other legally valid basis to believe that Mr. Niston had committed, was committing, or was about to commit any crime.

77. Defendant Officer Zerfas unreasonably seized and arrested Mr. Niston, in violation of his rights under the Constitution of the State of Colorado.

78. Officer Zerfas did not at any time during this encounter with Mr. Niston have probable cause or reasonable suspicion or any other legally valid basis to believe that Mr. Niston had committed, was committing, or was about to commit any crime.

79. At the time she arrested Mr. Niston for DUI, Officer Zerfas had no validly obtained evidence supporting probable cause to arrest him.

80. Mr. Niston plainly appears utterly sober and decidedly unimpaired throughout his encounter with Officer Zerfas.

81. Officer Zerfas violated Mr. Niston's state constitutional rights by engaging in an unlawful seizure of Mr. Niston that was objectively unreasonable in light of the facts and circumstances confronting her before, during and after her encounter with Mr. Niston.

82. Officer Zerfas knowingly violated Mr. Niston's individual rights as secured by the bill of rights of the Colorado Constitution.

83. Defendant Zerfas did not act upon a good faith and reasonable belief that her actions in seizing Plaintiff without probable cause or reasonable suspicion was lawful.

84. The acts or omissions of Defendant Zerfas were the moving force behind, and the proximate cause of, injuries sustained by Mr. Niston.

85. Defendant Zerfas's wrongful arrest and humiliation of Mr. Niston caused him to experience extraordinary stress, expense, depression, terror and anxiety. The experience of this event caused and continues to cause Mr. Niston trauma and emotional distress, loss of any feeling of safety or security, along with all the other damages and injuries described herein.

<u>SECOND CLAIM FOR RELIEF</u>
42 U.S.C. § 1983 – Unlawful Arrest Without Probable Cause
Violation of Fourth Amendment
(against Defendant Zerfas)

86. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

87. The actions of Defendant Zerfas as described herein, while acting under color of state law, intentionally deprived Mr. Niston of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including his right to be free from unlawful seizure as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. § 1983, in that Mr. Niston was arrested without a warrant and without probable cause to believe he had committed any offense.

88. Defendant Sergeant Zerfas knew that Mr. Niston was unimpaired and that she had no probable cause to arrest him and she did so anyway, with deliberate indifference to Mr. Niston's rights under the Fourth Amendment to the U.S. Constitution.

89. Officer Zerfas's arrest of Mr. Niston was objectively unreasonable in light of the facts and circumstances confronting her before, during, and after this encounter.

90. Defendant Zerfas's conduct described herein was attended by circumstances of malice, or willful and wanton conduct, which she must have realized was dangerous, or that was done heedlessly and recklessly, without regard to the consequences or the rights of others, particularly Plaintiff.

91. Defendant Zerfas caused Plaintiff to be arrested without probable cause or a warrant, and the false statements in his reports caused Plaintiff to be wrongly subjected to criminal prosecution. Defendant Zerfas's actions were done with malice and caused Plaintiff damages.

<u>THIRD CLAIM FOR RELIEF</u>
Section 13-21-131, C.R.S. – Violation of Due Process
*Malicious Prosecution*
Violation of Colorado Constitution, Article II, Section 25
(against Defendant Zerfas)

92. Plaintiff Mr. Niston incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

93. Section 25 of Article II of the Colorado state constitution guarantees to Mr. Niston the right to not be deprived of life, liberty or property, without due process of law.

94. Defendant Zerfas caused the criminal prosecution against Mr. Niston by falsifying and deliberately exaggerating the facts in her report and her Affidavit for Warrantless Arrest, and omitting all reference to the mountain of evidence and observations indicating that Mr. Niston was sober and unimpaired, in an effort to make it more likely to appear there had been probable cause for Mr. Niston's arrest, and providing those documents to the District Attorney.

95. This civil rights violation wrought by Defendant Zerfas is particularly reprehensible considering that she saw Mr. Niston's breath results reveal a BAC of triple zeroes. Even if she was mistaken about impairment prior to this point (she wasn't), upon receipt of this definitive proof of Mr. Niston's innocence, any reasonable officer would have released Mr. Niston and ceased the wrongful criminal prosecution they had initiated against him.

96. Defendant Zerfas did no such thing. Instead, she doubled down – copying from another DUI arrest's report the section describing the driver having 6 out of 6 HGN clues and pasting that into Mr. Niston's report. She invested even more time and care into crafting purposeful exaggerations and misleading claims of impaired behavior in the documents she knew would control the in-court fate of Mr. Niston's case.

97. Defendant Zerfas's false allegations and deliberate factual omissions were the sole moving force behind the criminal prosecution against Mr. Niston.

98. Defendant Zerfas's actions were done with malice.

99. No probable cause supported the criminal charges Zerfas brought against Mr. Niston.

100.   The criminal prosecution against Mr. Niston resolved in his favor when the Boulder County Court dismissed the case against him.

101.   Defendant Zerfas's malicious and false prosecution of Mr. Niston caused him to suffer further trauma, damages, lost wages, suffering, depression, and despair in the various manners already described herein.

<u>FOURTH CLAIM FOR RELIEF</u>
42. U.S.C. § 1983 – Malicious Prosecution
Fourth Amendment, Due Process Violations
(against Defendant Zerfas)

102.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set forth fully herein.

103.   Defendant Officer Zerfas caused the criminal prosecution against Mr. Niston by falsifying and deliberately exaggerating the facts in her report in an effort to make it more likely to appear there had been probable cause for Mr. Niston's arrest, and providing those documents to the District Attorney.

104.   Defendant Zerfas's false allegations were the sole moving force behind the criminal prosecution against Mr. Niston.

105.   Defendant Zerfas's actions were done with malice.

106.   No probable cause supported the criminal charges Zerfas brought against Mr. Niston.

107.   The criminal prosecution against Mr. Niston resolved in his favor when the Boulder County Court dismissed the case against him.

108.    Defendant Zerfas's malicious and false prosecution of Mr. Niston caused him to suffer further trauma, damages, lost wages, suffering, depression, and despair in the various manners already described herein.

FIFTH CLAIM FOR RELIEF
§ 13-21-131, CRS – Unlawful seizure/detention, Unlawful Search
(detention after breath test and subjecting to unlawful blood test)
Violation of Colorado Constitution, Article II, Section 25
(against Defendants Kimbley and Zerfas)

109.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

110.    Section 13-21-131 of the Colorado Revised Statutes directs that any peace officer who "subjects or causes to be subjected, including failure to intervene, any other person to the deprivation of any individual rights … secured by the bill of rights, article II of the state constitution is liable to the injured party for legal or equitable relief or any other appropriate relief."

111.    Statutory immunities and statutory limitations on liability, damages, or attorneys fees do not apply to claims brought pursuant to § 13-21-131.

112.    Defendant Zerfas and Defendant Kimbley were police officers under Colo. Rev. Stat. § 24-31-901(3), employed by the City of Longmont and its Police Department at the time they wrongfully seized, arrested and maliciously prosecuted Mr. Niston.

113.    After Mr. Niston submitted to a breath test that produced a result of 0.000% BAC, Defendants Zerfas and Kimbley went from knowing they did not have probable cause to arrest Mr. Niston to knowing that they were continuing the unlawful seizure of an in fact proved-to-be-innocent individual.

114.    Defendant Zerfas's and Kimbley's actions as described in this section were done with malice and caused Plaintiff damages.

SIXTH CLAIM FOR RELIEF
42 U.S.C. § 1983 – Unlawful seizure/detention, Unlawful Search
(detention after breath test and subjecting to unlawful blood test)
Violation of Fourth Amendment to US Constitution
(against Defendants Kimbley and Zerfas)

115.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

116.    The actions of Defendants Zerfas and Kimbley as described herein, while acting under color of state law, intentionally deprived Mr. Niston of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including his right to be free from unlawful seizure as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. § 1983, when they obtained proof of his innocence (triple zeroes breath test) and chose not to

release him but to instead continue his unlawful detention, unlawful prosecution, and force him to submit to an invasive and unlawful search of his blood.

117.    Defendant Sergeant Kimbley and Officer Zerfas continued their unlawful seizure of Mr. Niston's person and forced him to submit to an unlawful search of his blood with deliberate indifference to Mr. Niston's rights under the Fourth Amendment to the U.S. Constitution.

118.    Defendant Zerfas's and Kimbley's actions as described in this section were done with malice and caused Plaintiff damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendant, and award him all relief as allowed by law and equity, including but not limited to:

a.  Declaratory relief and injunctive relief, as appropriate;

b.  Actual economic damages as established at trial;

c.  Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, trauma, fear, anxiety, loss of enjoyment of life, loss of liberty, loss of sense of security, and other non-pecuniary losses;

d.  Punitive or exemplary damages for all claims as allowed by law in an amount to be determined at trial;

e.  Issuance of an Order mandating appropriate equitable relief, including but not limited to:

    i.  Issuance of a formal written apology from each Defendant to Plaintiff;

    ii.  The imposition of appropriate policy changes designed to avoid future similar misconduct by Defendant;

    iii.  Mandatory training designed to avoid and prevent future similar misconduct by Defendant;

    iv.  Imposition of disciplinary action against appropriate employees of Longmont;

f.  Pre-judgment and post-judgment interest at the highest lawful rate;

g.  Attorney's fees and costs; and

h.  Such further relief as justice requires.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this 6th day of January, 2025, by:

THE LIFE & LIBERTY LAW OFFICE

*s/ Sarah Schielke*
Sarah Schielke, #42077
*Counsel for Plaintiff*

**Exhibit B**

☐**FORM 1.2. DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND**

DATE FILED
January 6, 2025 7:37 PM
FILING ID: 7F7433B6364A1
CASE NUMBER: 2025CV30019

| | |
|---|---|
| District Court BOULDER _____ County, Colorado<br>Court Address: 1776 6th Street<br>Boulder, CO 80302<br><br>Plaintiff(s): BENJAMIN NISTON<br>v.<br>Defendant(s): OFFICER MADISON ZERFAS, et al | ▲ COURT USE ONLY ▲ |
| Attorney or Party Without Attorney (Name and Address):<br>Sarah Schielke, esq.<br>1055 Cleveland Avenue, Loveland, CO 80537<br>Phone Number: (970) 493-1980    E-mail: sarah@lifeandlibertylaw.com<br>FAX Number: (970) 797-4008    Atty. Reg. #: 42077 | Case Number:<br>2025CV |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT,<br>COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT<br>AND JURY DEMAND**

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR),, Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases or in Water (CW) proceedings subject to sections 37-92-302 to 37-92-305, C.R.S. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

   ☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

   ☒ This party is seeking a monetary judgment against another party of more than $100,000.00, exclusive of interest and costs, as supported by the following certification:

   By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000.

   **Or**

☐  Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3.  ☒  This party makes a **Jury Demand** at this time and pays the requisite fee. *See* C.R.C.P. 38. (Checking this box is optional.)

Date: _____

_____
**Signature of Party**

Date: _1/6/25_

_____
**Signature of Attorney for Party (if any)** _____

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.

**Exhibit C**

| | |
|---|---|
| **BOULDER COUNTY DISTRICT COURT**<br>**STATE OF COLORADO**<br><br>1776 6th Street<br>Boulder, CO 80302<br><br>**BENJAMIN NISTON**,<br>Plaintiff,<br><br>v.<br><br>**OFFICER MADISON ZERFAS**, in her individual capacity,<br>**SERGEANT MICHAEL KIMBLEY**, in his individual capacity,<br>Defendant. | DATE FILED<br>January 6, 2025 7:37 PM<br>FILING ID: 7F7433B6364A1<br>CASE NUMBER: 2025CV30019<br><br>▲  COURT USE ONLY  ▲<br><br>Case Number: 2025CV<br><br>Division:        Courtroom: |

## DISTRICT COURT CIVIL SUMMONS

**TO THE ABOVE NAMED DEFENDANT: MADISON ZERFAS,** 225 Kimbark Street, Longmont, CO 80501

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: _____1/6/2025_____          _____
                                                Clerk of Court/Clerk

                                                _/s/ Sarah Schielke_____
                                                Signature of Plaintiff

                                                1055 Cleveland Avenue, Loveland, CO 80537_____
                                                Address of Plaintiff

                                                (970) 493-1980_____
                                                Plaintiff's Phone Number

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

**Exhibit D**

<table>
<tr><td colspan="2">

**BOULDER COUNTY DISTRICT COURT STATE OF COLORADO**

1776 6th Street
Boulder, CO 80302

**BENJAMIN NISTON**,
Plaintiff,

v.

**OFFICER MADISON ZERFAS**, in her individual capacity,
**SERGEANT MICHAEL KIMBLEY**, in his individual capacity,
Defendant.

</td><td>

DATE FILED
January 6, 2025 7:37 PM
FILING ID: 7F7433B6364A1
CASE NUMBER: 2025CV30019

▲  COURT USE ONLY  ▲

Case Number: 2025CV

Division:        Courtroom:

</td></tr>
<tr><td colspan="2" align="center">

**DISTRICT COURT CIVIL SUMMONS**

</td></tr>
</table>

**TO THE ABOVE NAMED DEFENDANT: MICHAEL KIMBLEY,** 225 Kimbark Street, Longmont, CO 80501


**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint.  If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you.  If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you.  Your answer or counterclaim must be accompanied with the applicable filing fee.


If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.


Dated:    1/6/2025

Clerk of Court/Clerk

_/s/ Sarah Schielke_
Signature of Plaintiff

1055 Cleveland Avenue, Loveland, CO 80537
Address of Plaintiff

(970) 493-1980
Plaintiff's Phone Number


**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:**  A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal.  The plaintiff has 14 days from the date this summons was served on you to file the case with the court.  You are responsible for contacting the court to find out whether the case has been filed and obtain the case number.  If the plaintiff files the case within this time, then you must respond as explained in this summons.  If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

**Exhibit E**

<table>
<tr>
<td colspan="2">BOULDER COUNTY DISTRICT COURT<br>STATE OF COLORADO<br><br>1776 6th Street<br>Boulder, CO 80302</td>
<td rowspan="3">DATE FILED<br>January 22, 2025 1:41 PM<br>FILING ID: BB55CE53CB561<br>CASE NUMBER: 2025CV30019<br><br>▲   **COURT USE ONLY**   ▲</td>
</tr>
<tr>
<td colspan="2"><b>BENJAMIN NISTON,</b><br>Plaintiff,<br><br>v.<br><br><b>OFFICER MADISON ZERFAS</b>, in her individual capacity,<br><b>SERGEANT MICHAEL KIMBLEY</b>, in his individual capacity,<br>Defendants.</td>
</tr>
<tr>
<td><i>Attorney for Defendant:</i><br>Sarah Schielke, #42077<br>The Life & Liberty Law Office<br>1055 Cleveland Avenue<br>Loveland, CO 80537<br>sarah@lifeandlibertylaw.com</td>
<td>P: (970) 493-1980<br>F: (970) 797-4008</td>
<td>Case Number: 2025CV30019<br><br><br>Division: 2</td>
</tr>
<tr>
<td colspan="3" align="center"><b>WAIVER OF SERVICE</b></td>
</tr>
</table>

I, Mark S. Ratner_____, am authorized to accept service on behalf of Defendant Madison Zerfas and do so accept service of the Complaint and Jury Demand and Civil Cover Sheet in the above-captioned matter on <u>January 9, 2025</u>, on behalf of Madison Zerfas.

1/22/25
Date

Signature of the attorney for Madison Zerfas

**Exhibit F**

| | |
|---|---|
| **BOULDER COUNTY DISTRICT COURT**<br>STATE OF COLORADO | |
| 1776 6th Street<br>Boulder, CO 80302 | DATE FILED<br>January 22, 2025 1:41 PM<br>FILING ID: BB55CE53CB561<br>CASE NUMBER: 2025CV30019 |
| **BENJAMIN NISTON,**<br>Plaintiff,<br><br>v.<br><br>**OFFICER MADISON ZERFAS**, in her individual capacity,<br>**SERGEANT MICHAEL KIMBLEY**, in his individual capacity,<br>Defendants. | ▲    **COURT USE ONLY**    ▲ |
| *Attorney for Defendant:*<br>Sarah Schielke, #42077        P: (970) 493-1980<br>The Life & Liberty Law Office    F: (970) 797-4008<br>1055 Cleveland Avenue<br>Loveland,    CO    80537<br>sarah@lifeandlibertylaw.com | Case Number: 2025CV30019<br><br><br>Division: 2 |
| **WAIVER OF SERVICE** | |

I, _Mark S. Ratner_____, am authorized to accept service on behalf of Defendant Michael Kimbley and do so accept service of the Complaint and Jury Demand and Civil Cover Sheet in the above-captioned matter on _January 9, 2025_, on behalf of Michael Kimbley.

_1/22/25_
Date

Signature of the attorney for Michael Kimbley